**PHILLIPS v. CAPITAL INV. & GUARANTY CO. et al.**

**No. 18.**

Municipal Court of Appeals for the District of Columbia.

Jan. 13, 1942.

Vincent L. Toomey, of Washington, D. C., for appellant.

Edwin A. Swingle, of Washington, D. C. (Ernest A. Swingle and Allan C. Swingle, both of Washington, D. C., on the brief), for appellees.

Before RICHARDSON, Chief Judge, and CAYTON and HOOD, Associate Judges.

CAYTON, Associate Judge.

Appellant, plaintiff below, was a tenant in an apartment building of the defendants and was injured in a fall on the stairs on July 14, 1940. About 8 o'clock in the evening of that day, plaintiff left her apartment on the second floor to visit other tenants on the fourth floor. Receiving no response to the elevator bell, she walked up the public stairway. The light was then out at the third floor platform. About an hour later she started back to her own apartment. Again receiving no response to the elevator bell, she started to return by the same stairway. She kept her hand on the hand-railing to her right. Half-way between the fourth and third floors the stairs turned on themselves by means of three fan-shaped treads which were very narrow at the right side going down, with very little footing at that side, and spread out to a greater width on the left as they opened up on the next downward flight. When she had descended five steps from the fourth floor platform, she "lost her footing and fell" the remaining three steps on that flight and around the fan-shaped steps at the turn until her fall was arrested by her head hitting the iron rail around the bannister turn.

Defendant offered evidence that the stairway lights had been regularly inspected and that the light in question was burning at about 6 o'clock on the evening of the day in question. It was not claimed that the stairs were worn or slippery, or that there was any foreign substance thereon. The uncontradicted evidence was to the contrary.

The trial judge, with the assent of both counsel, visited the premises; had the janitor turn out the third-floor light; and ascended and descended the particular stairs

several times. Thereafter in open court the trial judge made a finding that even with the third-floor light extinguished, there was ample illumination on the stairs where the plaintiff had fallen, and that the injury could not be attributed to the fan-shaped landing described. Judgment for defendants resulted.

■ Plaintiff complains that the fan-shaped construction of the landing was in violation of certain building regulations.[1] But we find that said regulations had no controlling effect here because the building had been constructed some forty years before, and there is nothing in the language of the regulations to make them retroactive in operation. They are specifically limited to "new residential buildings." This situation is unlike that in Hill v. Raymond, 65 App. D.C. 144, 81 F.2d 278, where the court construed the regulations there involved to apply to buildings already constructed. Those regulations concerned the maintenance and operation of buildings rather than, as here, the method of original construction. Here the defendants had never been called upon to reconstruct the stairway landing in question. On the contrary, they had each year received a new license to operate the building as an apartment house. These licenses could not have been obtained without prior inspection and approval each year by the inspector of buildings, the chief officer of the fire department, and the electrical engineer.[2] Aside from that, however, we think there was substantial evidence to justify a finding that the structural condition of the stair landing was not the producing cause of plaintiff's injury. Taken at its strongest, plaintiff's case indicates merely that when she was three steps away from the landing she "lost her footing" and fell. This, without more, would hardly have made even a prima facie case, for it is more consistent with a theory of mere accident than with one of negligence. But she insists that she should have a recovery because her fall would have been arrested by a flat platform had one been there in place of the fan-shaped arrangement that was there. This is pure conjecture and we believe the trial court was justified in refusing to adopt it as a basis for decision.

■■ Undoubtedly, it was the duty of the defendants to maintain reasonably sufficient lighting on the stairs of their building; but this does not cast upon them the duty of accomplishing the impossible or unreasonable, or render them liable as insurers for any injury that may befall a tenant.[3] They had caused regular inspections to be made of the stairs and lights and, in fact, the particular light was burning within two hours of the time appellant started up the stairs. Neither she nor any one else had reported the condition to the janitor, or any one in charge of the building before the injury. We, therefore, find no evidence of negligence in this respect.

Appellant relies heavily upon Salomon v. Timpson Place Const. Corp., 166 Misc. 506, 2 N.Y.S.2d 718. We have examined this case and believe it is not controlling in the situation here presented. She cites also Hill v. Raymond, supra. The applicable parts of that decision, however, merely require that the question of negligence be submitted to the jury when a showing is made that an apartment house keeper has failed to comply with statutes or regulations relating to stair treads and lights. It reversed the action of the trial judge in taking such a question from the jury. Here the trial was without a jury and the trial judge was presented with ample evidence to overcome the rather questionable showing the plaintiff had made in her own case.

Affirmed.

---

[1] Articles 601-02-c., 601-02-d., and 601-02-f., of the D. C. Building Regulations.

[2] This was in compliance with the D. C. Code (1940 Edition), Title 47, Sec. 2302, which provides in part: " * * * no license shall be issued under the provisions of this chapter relating to hotels, apartment houses, lodging houses, * * * until the inspector of buildings, the chief officer of the fire department, and the electrical engineer have certified in writing to the commissioners of the District of Columbia or their designated agent that the applicant for license has complied with the laws enacted and the regulations made and promulgated for the protection of life and property. (July 1, 1902, 32 Stat. 622, ch. 1352, § 7; July 1, 1932, 47 Stat. 550, ch. 366, par. 2.)"

[3] Bell v. Central Nat. Bank, 28 App.D. C. 580; Harrison v. Mortgage Inv. Co., 61 App.D.C. 155, 58 F.2d 881.